UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: KRAIG SCOTT SULLIVAN,   Case No. 09-18772-RGM
DONNA LYNN SULLIVAN,   Chapter 11
Debtors.

## OJBECTION TO CONFIRMATION OF FIRST AMENDED PLAN OF REORGANIZATION

**COMES NOW** Union First Market Bank ("UFMB"), by counsel, and as and for its Objection to Confirmation of the Debtors' First Amended Plan of Reorganization and states as follows, to wit:

1. No trustee has been appointed and the Debtors remain in possession and control of their estate. The filing of this case acts as a stay against collection proceedings by UFMB against Debtors pursuant to 11 U.S.C. § 362.

2. At the time of the filing of the petition in bankruptcy herein, the husband Debtor owned the following properties:

    A. All that certain lot or parcel of land together with all buildings and improvements thereon and all rights and privileges appurtenant thereto, situate, lying and being in the City of Fredericksburg, Virginia, on the East side of Sophia Street, bounded on the North and South by the property owned by the City of Fredericksburg, on the East by the Rappahannock River and on the West by Sophia Street, being commonly known as 1005 Sophia Street in the City of Fredericksburg.

        This property has the address of 1003-1005 Sophia Street, Fredericksburg, VA 22401.

**Jonathan L. Hauser, VSB No. 18688**
**Troutman Sanders LLP**
**222 Central Park Avenue, Suite 2000**
**Virginia Beach, VA 23462**
**(757) 687-7768**
**(757) 687-1505 - Fax**
*Counsel for Union First Market Bank*

B.  PARCEL ONE:
All that certain lot or parcel of land situate, lying and being in the City of Fredericksburg, Virginia, beginning at a point on the eastern side of Princess Anne Street 61.9 feet north of the intersection of Princess Anne Street and Canal Street and running with E. J. Cain, formerly Alexander Mills, thence south along the line of Princess Anne Street twenty-eight (28) feet and six (6) inches to the division fence between the lot being conveyed and the lot retained by W. D. Williams Estate, now W. S. Jackson, thence at right angles with Princess Anne Street and eastwardly along said division fence one hundred and twenty-three (123) feet and six (6) inches to an alley, thence at right angles, or nearly so, and northward along said alley twenty-eight (28) feet and six (6) inches to the line of E. J. Cain, thence at right angles and parallel with Canal Street one hundred and twenty-three (123) feet and six (6) inches to the point of beginning.

PARCEL TWO:
All that certain lot or parcel of land situate in the City of Fredericksburg, Virginia, at the northeast corner formed by the intersection of Princess Anne and Canal Streets, fronting 33.4 feet, more or less, on the east side of Princess Anne Street and extending back easterly between lines parallel or nearly parallel a distance of 123 feet and 6 inches, more or less, bounded on the east by an alley, on the south by Canal Street, on the west by Princess Anne Street, and on the north by a division fence and land now or formerly W. H. Brulle.

This property has the address of 1601-1603 Princess Anne Street, Fredericksburg, Virginia 22401.

C.  All that certain lot or parcel of land with all buildings and improvements thereon and all rights and privileges appurtenant thereto, situate, lying and being in the City of Fredericksburg, Virginia, located on the east side of Sophia Street between William and George Streets and being known as the old Brick Warehouse or old W. K. Gordon lot in Block 13, as shown on a plat dated March 25, 1953, made by L. R. R. Curtis, C.S., and recorded in Deed Book 92, at Page 218, in the Clerk's Office of the Circuit Court of Fredericksburg, Virginia.

This property has the address of 915 Sophia Street, Fredericksburg, Virginia 22401.

3. UFMB holds four (4) Notes secured by liens on the aforesaid properties which Notes had principal balances as follows as of the date of the filing of the case herein:

   (a) Note No. 3486 - $276,902.29;
   (b) Note No. 3492 - $378,692.12;
   (c) Note No. 4487 - $296,747.66; and
   (d) Note No. 3494 - $100,000.00.

4. The indebtednesses aforesaid do not include interest which is increasing on a daily basis nor attorney's fees and costs incurred. UFMB has received no payments from the Debtors since the commencement of this case. There are delinquent real estate taxes against each of the properties and the Debtors have failed to pay any post-petition real estate taxes.

5. The liens aforesaid are in excess of the fair market values of the properties secured thereby. There is no equity in the properties aforesaid for the benefit of the Debtors or their estate.

6. UFMB has filed a Motion for Relief from Stay which is set for trial on September 28, 2010.

7. At hearing upon the request by the Debtors for approval of their Disclosure Statement, on July 27, 2010, UFMB's counsel requested leave to examine briefly Debtor Kraig Sullivan ("Sullivan") and did so. A copy of that direct examination is attached hereto, marked Exhibit 1, and incorporated herein. At that time, Sullivan testified that none of the properties that he owned were subject to written leases, just "verbal agreements when they moved in". Sullivan further testified

that he had not received any monies from any tenant except for a "check but it bounced. I got a bounced check."

    Q.    Have you received any monies from checks that have cleared?
    A.    No.

8. Additionally, in the Debtors' First Amended Disclosure Statement at page 7, Sullivan represented to this Court that "although Kraig has not been successful in re-letting the properties, he remains optimistic he will be able to do so, or that he will find purchasers as the market improves."

9. By his testimony, Sullivan has perjured himself. Additionally, certain representations made in his Disclosure Statements are false.

10. UFMB has discovered that Sullivan has received significant funds from the tenants of the real estate on which UFMB has a lien since the filing of this case, much of which he has failed to report on his monthly operating reports.

11. Attached hereto as Exhibit 2 is the Declaration of Sheila Harris. Ms. Harris' Declaration demonstrates that in March 2010, she entered into a written lease with Sullivan, and subsequently has tendered to him significant rentals on a monthly basis. All of these rentals are cash collateral as that term is defined by the Bankruptcy Code. None of these rentals have been turned over to UFMB. Many are not reported in Sullivan's monthly financial reports, copies of which are attached hereto and marked Exhibits 3 through 9.

12. Specifically, the following rentals which Sullivan has received from Sheila Harris are not reported on his monthly financial reports:

- Sullivan testified that he had no written leases. Sheila Harris executed a written Agreement of Lease with Sullivan on or about March 19, 2010. In connection with the execution of the terms relating to this Lease, Sheila Harris tendered $3,000.00 to Sullivan. This $3,000.00 does not show up in Sullivan's monthly operating report.

- On or about April 30, 2010, Sheila Harris tendered checks in the amount of $3000.00 and $394.00 to Sullivan which he cashed (see Exhibit 4 of the Harris Declaration). These funds do not show up anywhere on Sullivan's monthly operating reports. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code.

- On June 1, 2010, Sheila Harris tendered two checks in the amounts of $3,000.00 and $394.00 which Sullivan cashed (see Exhibits 5 and 6 of the Harris Declaration). These checks are not listed in Sullivan's monthly operating reports. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code. Sullivan has not filed a monthly operating report for July or August.

13. Attached hereto as Exhibit 10 is the Declaration of Bruce and Laurie Ulizio (the "Ulizio Declaration"). The Ulizio Declaration also demonstrates that Sullivan was party to a Commercial Lease on property on which UFMB had the lien of a deed of trust.

14. The Ulizio Declaration demonstrates the following funds that Sullivan has failed to report in his monthly operating reports which are filed under the penalty of perjury:

- Exhibit 3 of the Ulizio Declaration shows that Sullivan cashed a check in the amount of $858.33. Sullivan's related monthly operating report indicates that only $500.33 of these funds was deposited into his DIP account. The balance was not reported. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code.

- Exhibit 4 of the Ulizio Declaration indicates that Sullivan cashed a check in the amount of $858.33 on or about January 11, 2010. These funds do not show up on Sullivan's January 2010 monthly operating report. Sullivan spent these funds in violation of his cash collateral responsibilities under the

Bankruptcy Code.

- Exhibit 5 of the Ulizio Declaration indicates that Sullivan cashed a check in the amount of $858.33 on or about February 8, 2010. These funds do not show up on Sullivan's February 2010 monthly operating report. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code.

- Exhibit 7 of the Ulizio Declaration indicates that Sullivan cashed a check in the amount of $858.33 on or about April 9, 2010. These funds do not show up on Sullivan's April 2010 monthly operating report. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code.

- Exhibit 8 of the Ulizio Declaration indicates that Sullivan cashed a check in the amount of $858.33 on or about May 11, 2010. These funds do not show up on Sullivan's May 2010 monthly operating report. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code. Sullivan spent these funds in violation of his cash collateral responsibilities under the Bankruptcy Code.

15. The foregoing demonstrates that Sullivan has perjured himself in numerous written reports filed with this Court, as well as in his oral testimony before this Court. He should not be permitted to remain in possession.

16. Sullivan has used funds that are cash collateral in violation of his cash responsibilities under the Bankruptcy Code. Early in the case on November 6, 2009, counsel for UFMB advised Debtors' counsel that UFMB did not authorize or give consent to the use of cash collateral. (See Exhibit 11 attached hereto.)

17. The husband Debtor was noticed for a deposition on Friday, September 10, 2010. He failed to appear – his counsel explained that the Debtor had recently advised counsel that he might be in prison at the time the deposition was scheduled. The wife Debtor did appear, but testified that she had only sporadic contact with the

husband Debtor (they having separated in 2008) and no knowledge of any events relating to the real estate that he owns.

18. Under such circumstances (failure to attend his deposition, presenting perjured testimony to this court and filing false financial reports), the Debtors are not proceeding in good faith and should not have the benefit of confirmation of a chapter 11 Plan.

19. UFMB's claims are treated in Classes 1, 2 and 3 of the Plan. UFMB has served its ballots voting against confirmation of the Plan. The treatment of each Class is virtually identical. The Debtors propose to continue to market these properties with the same real estate agent as has been marketing them for the past year or longer, make no payments during such period and if they are not sold, turn them over to UFMB.

20. The treatment of UFMB's claims is unfair and inequitable. The Debtors have been attempting to sell the real property securing UFMB's claims for a full year without success. There is no reasonable likelihood that they will be able to do so in the next 9 months. There is no equity in these properties for the benefit of the Debtors or their estate, thus a sale will not benefit the Debtors or their estate. The real estate agent who is proposed to continue to market the properties has virtually no commercial real estate experience and has been entirely unsuccessful in selling any of the Debtors' properties (these as well as all the Debtors' other properties) for the past three years.

21. The Plan also proposes to apply any rents received to the debts of UFMB. This is

a charade since the Debtors' have absconded with all rents heretofore, in violation of the cash collateral provisions of the Bankruptcy Code. This constitutes statutory cause to convert this case to a Chapter 7 case.

**WHEREFORE,** Union First Market Bank objects to confirmation of the proposed Amended Chapter 11 Plan of Reorganization and requests that this case be dismissed or converted to a case under Chapter 7 of the United States Bankruptcy Code.

**UNION FIRST MARKET BANK**

By: /s/ *Jonathan L. Hauser*
 Of Counsel

Jonathan L. Hauser, VSB No. 18688
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
(757) 687-7768
(757) 687-1505 - Fax

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent either electronically or by first class mail, postage prepaid, this 19th day of September, 2010, to all necessary parties including:

Kraig Scott Sullivan
98 Peacock Station Road
Fredericksburg, VA 22406-5138

Donna Lynn Sullivan
3115 Linden Avenue
Fredericksburg, VA 22401

Robert B. Easterling, Esq.
2217 Princess Anne Street, Suite 100-2
Fredericksburg, VA 22401-3359

Office of the U.S. Trustee
115 S. Union Street
Alexandria, VA  22314-3361

                                                     */s/ Jonathan L. Hauser*

```
406315v1
```